PENDLETON and others *v.* KNICKERBOCKER LIFE INS. CO.

(*Circuit Court, W. D. Tennessee.*   January 10, 1881.)

1. LIFE INSURANCE—FORFEITURE—NON-PAYMENT OF PREMIUM—COMMERCIAL PAPER.—If a life insurance company take commercial paper in payment of a premium, it implies an undertaking on its part to present the paper for acceptance or payment, and to give the necessary legal notice of refusal to accept or pay, the same as any other holder of such paper must have done; and a failure to do this will save a forfeiture of the policy, although the paper and the policy itself contain an express provision that the policy shall be void for any omission to pay at maturity a note, other obligation, or indebtedness taken for a premium, unless the neglect to make demand and give notice is excused by want of funds and the absence of a reasonable expectation by the drawer of acceptance or payment by the drawee.

2. SAME SUBJECT—NO DECLARATION OF FORFEITURE NECESSARY.—If the policy provide that on failure to pay a premium, or any note or other obligation taken for it, at maturity, the failure " shall then and thereafter cause this policy to be void, without notice to any party or parties interested herein," no declaration by the company of the forfeiture, or notice of its claim that the policy has ceased, will be required to give this clause effect.

3. SAME SUBJECT—RETURN OF CASH PAYMENT AND DRAFT.—Nor will the company be required to return that part of the premium paid in cash, and the dishonored draft, to entitle it to claim the benefit of that clause in the policy forfeiting it for non-payment of the draft at maturity.

4. COMMERCIAL PAPER—PRESENTATION FOR ACCEPTANCE OR PAYMENT —LACHES—EXCUSE.—A draft payable " three months after date, without grace," drawn on the fourteenth of July, 1871, becomes due October 14, 1871, and cannot be legally presented for payment on the third or fourth day after that date. Such a draft need not be presented for acceptance; but if the holder undertake to present for acceptance, he must proceed in all respects as if the obligation to so present existed. A failure, therefore, to give legal notice of non-acceptance, by protest and notice, will require the holder to subsequently make legal presentation for payment, and give notice of non-payment. If presentation for payment be legally made on the proper day and at the proper place, protest and notice are required if payment be refused; and a failure to do this, or a failure to present for payment on the proper day, can only be excused by showing a want of funds, and an absence of reasonable ground for expectation of payment. What constitutes such reasonable expectation explained, and these principles applied to the case in judgment of an insurance

company holding a draft of the life assured in part payment of a premium under a policy forfeiting it if the draft be not paid at maturity.

5. LIFE INSURANCE—PROOF OF LOSS—WHEN NOT NECESSARY.—If due notice of the death of the life assured be given, and the company claim that the policy is forfeited and repudiate the obligation, making no demand for proof of loss, it cannot claim that the suit is prematurely brought because such proof has not been filed with it as required by the policy.

6. SAME SUBJECT—DEDUCTION OF UNPAID PREMIUM.—If the company take commercial paper in part payment of the premium, and by its laches the drawer be discharged, *it seems* that the legal effect of the transaction is that the premium is paid by the draft taken, and the loss is on the company, and it cannot deduct the amount of the draft from the amount of insurance; but in this case, by consent of plaintiffs, it was done.

*Humes & Poston* and *Lowrey Humes,* (with them,) for plaintiffs.

*H. W. Johnson* and *E. L. Belcher,* for defendant.

On the fourteenth of July, 1870, Dr. Samuel H. Pendleton, of Mount Auburn, Arkansas, took out a policy of insurance, amounting to $10,000, in the Knickerbocker Life Insurance Company, the premium being made payable by draft on Moses Greenwood & Co., cotton factors, New Orleans. In 1871, when the premium fell due, Dr. Pendleton gave Greene & Lucas, agents for the Knickerbocker, a time draft on Greenwood & Co. for $325, due 90 days after date, and the balance in a sight draft on the same house, which latter draft was paid. They delivered to Pendleton, at the time they took these drafts, a renewal receipt in the usual form acknowledging the receipt of the premium in full, and continuing the risk for one year. Greene & Lucas put the time draft in the Union and Planters' Bank, to be sent to their bank at New Orleans, with instructions not to protest. The draft was presented for acceptance on the twenty-ninth of September, and acceptance refused; no protest was made, and no notice was given except by letter of Greene & Lucas, on the second of October, 1871. The draft was then sent to New Orleans for payment, and there is a dispute as to whether it was presented October 14th, when it fell due, being without grace, or on the last day of

grace, three days thereafter. The draft was not paid, no protest was made, or notice given, except by letter of Greene & Lucas, November 20, 1871. The draft contained the statement that it was given for a premium on a policy "which shall be void if this draft is not paid at maturity," and the same condition was also in the policy. The jury returned a verdict of $15,175 for the plaintiffs.

HAMMOND, D. J., (*oral charge to jury*.) By the terms of this policy the obligation of the company to pay the amount of $10,000 upon the death of Dr. Pendleton ceases upon the failure of the plaintiffs here to comply with a condition in the policy relied on by the defendant company, which is in the following words: "And the omission to pay the said annual premium on or before 12 o'clock noon on the day or days above designated for the payment thereof, or failure to pay at maturity any note, obligation, or indebtedness (other than the annual cost or loan) for premium or interest hereon, shall then and thereafter cause this policy to be void, without notice to any party or parties interested herein."

It is not necessary, as has been contended by the plaintiffs, that the company should declare a forfeiture or give notice that they claimed the benefit of this condition upon the failure to pay either the premium or any obligation given for it; the policy is self-forfeiting upon the failure to pay either the premium or any obligation given for it. Nor was the company bound to return the obligation upon its non-payment, or the part of the premium paid in cash, to give this clause effect.

By the undisputed facts in this case it appears that on the fourteenth day of July, 1871, when the second premium fell due, Dr. Pendleton gave the Memphis managers a sight draft for $44.50 on Greenwood & Co., of New Orleans, (which was paid in cash,) in part payment of the $364.60 premium due, and for the balance of $325 he gave a draft on the same house, payable three months after date, without grace. Upon securing these drafts the renewal receipt, acknowledging the payment of the premium, was delivered, and before the year ended Dr. Pendleton, the life assured, died. The draft also

contained a statement that it was given "for premium on policy No. 2346, which policy shall become void if this draft is not paid at maturity," and has never been paid. The defence of the company is that the condition for payment has been violated, and the policy ceased before the death of Pendleton. This is undoubtedly a good defence, unless the law imposed some obligation on the company to perform some duty in respect to the draft which it has not performed, and the neglect of which precludes it from invoking the breach of the condition for payment as a defence. In other words, if by its own laches, and neglect of the duty assumed by it as holder of the draft, the failure to pay has occurred, or the parties have been injured, the company cannot rely on the breach of this condition as a defence. What, then, were the duties imposed on the company as the holder of this draft by the contract of the parties? The defendant company claims that it was the duty of the drawer, or the plaintiffs, to place funds in the hands of Greenwood & Co. to meet this draft at its maturity, and if the proof shows there were no funds there on that day to pay it, the policy became void on non-payment of the draft, whether you find as a fact that it was presented on that day for payment or not, and certainly if you find that it was so presented. I do not think this is a correct view of the law of the case or rights of the parties. This draft, according to its terms, being payable without grace, was payable on demand, at the counting-house of Greenwood & Co., in the city of New Orleans, on the fourteenth day of October, 1871. I have been inclined to think that if the draft was presented for payment on that day, at that place, and payment refused, the condition of the policy was broken; and, on the other hand, if no presentment for payment was made at that time and place, there has been no breach. The contract was that the sum should be paid at a particular time and place, or the policy should be void. If the company did not have the draft there at the time of maturity the condition could not be performed, and by its fault the performance became impossible, and, therefore, it cannot claim a breach. But I have concluded that the true measure of

the duty of the company is to be found in the rules of law governing a holder of commercial paper, and that by the very fact of taking a draft like this they assumed, in reference to this paper, all the duties devolving on a holder of it taken for any other consideration, and were obliged to proceed with it as any holder would be under the commercial law. On the other hand, any neglect to proceed properly in the discharge of that duty would be excused under the same circumstances as such neglect would be excused with any other holder, and not otherwise. The condition in the policy was a security to the company, of which it can avail itself only by showing a strict compliance with that duty, or some lawful excuse for non-compliance.

This was, in legal form and effect, a contract with the plaintiffs—the policy-holders, the children of Dr. Pendleton —to take from them the draft of a third person, negotiable in form, in payment of $325 of the premium due, secured by a stipulation that the policy should cease if the draft should not be paid at maturity. Now, what was the duty of the company and its agent? Its first duty was to fix the liability of the drawer by proper demand, protest, and notice, if it did not negotiate it by indorsement and impose that duty on some other holder. The parties from whom they took the draft, the plaintiffs here, had a right to this, and it might have been very material to them to have it done. Next, the duty the company owed the drawer was to notify him promptly and legally of any failure of the drawees to accept or pay. This draft being payable three months after date, the company was under no obligation to present it for acceptance, but if it did undertake to present for acceptance, it should have proceeded in all respects as if the obligation existed. There is no doubt the draft was sent forward for acceptance, presented, and acceptance refused. The proof will show you the date of the transaction. The plaintiffs say it was not till September 29, 1871. It was not protested for non-acceptance, the agents of the company having directed that no protest should be made, and no legal or proper notice of non-acceptance was given to the drawer. This was a clear

breach of duty on the part of the company, and precludes it from claiming a forfeiture of the policy, unless excused, as to which I shall instruct you further on. If protest and legal notice had been given for non-acceptance, the company need not have presented for non-payment; but, not having protested the note for non-acceptance, it was its duty to present at maturity and demand payment. There is some dispute as to whether the note was presented for payment on the day of its maturity, namely, October 14, 1871, or later, but there is no claim that it was protested for non-payment and legal notice given. The only notice was a letter from the agents dated November 20, 1871. This was not legal notice, and the drawer was clearly discharged unless the neglect was excused. By this neglect, as well as the neglect to protest and give legal notice for non-acceptance, the company precluded itself from relying on a breach of the condition in the policy. Indeed, the legal result is that the draft became payment in fact, and there was no breach of the condition unless on the facts of the case the neglect has been excused.

The only legal excuse would be want of funds in the hands of the drawees at the time of presentation; and this would not excuse if the drawer of the draft had reasonable ground to expect that his draft would be accepted and paid by the drawees. You will therefore look to the proof and say whether the drawer had funds in the hands of the drawees to meet this draft, and, if you find he did not, then you will determine whether there was reasonable expectation of acceptance of payment. In determining this question you will look to the facts in proof on both sides, and determine whether there was any contract between Pendleton and Greenwood & Co. that his drafts should be accepted and paid, and if you find there was such a contract he was entitled to demand and notice. If there was no contract, but an arrangement, and you find that Pendleton was a planter, and Greenwood & Co. his factors; that by the course of dealing between them they accepted and paid his drafts, advanced him money, and dealt with him so as to justify him in expecting they would accept and pay without reference to the state of the account; and if

you find they paid other drafts and similar ones to this company without funds,—these circumstances would show reasonable grounds of expectation to entitle him to demand and notice.    On the other hand, if you find that Pendletoh had no contract or arrangement with Greenwood & Co. to accept and pay, and that their course of dealing did not justify him in drawing without funds, or that by the contract or course of dealing he was required to give them notice of drafts by letters of advice, and that no such letters were sent as to this draft, he had no reasonable expectation of acceptance or payment without funds; and if you find there was no provision made to meet this draft the plaintiffs cannot recover.    You will apply these instructions to the presentation for acceptance, and if you find there were neither funds, contract, or other arrangement, nor a reasonable expectation of acceptance, the failure to protest and give notice would be excused.    If this default was thus excused, then it was still the duty of the company to present for payment on the fourteenth day of October, 1871.    If you find the draft was presented on that day, protest and notice not having been given, or if you find it was presented after that day, you will apply these instructions to that presentation also; and if you find there were no funds, and no reasonable expectation of payment, the plaintiffs cannot recover.    You are to determine these questions of fact on all the proof, and say whether the default of the company has been excused by want of funds and want of reasonable expectation of acceptance of payment.

As to the proof of loss not being filed, it is conceded notice of the death was given.    If, when that was done, the agents of the company repudiated all liability, and informed the parties that the policy had lapsed, then no proof of loss was required by them, and the failure to file it cannot alter the case.    If, however, the company or its agent did not thus waive proof of loss, then this action is prematurely brought, and the plaintiffs cannot recover until 90 days after proof filed with them.

There is a clause in this policy which authorizes all unpaid premiums to be deducted.    I think the inexorable logic of a

verdict for the plaintiffs, on the instructions I have given you, is that the premium has been in fact paid by the taking of this draft; but that question is out of the way, by the consent of the plaintiffs that you may deduct the draft and interest on it from any verdict in their favor. If you find for the plaintiffs, they are entitled to interest on the policy from 90 days after date of the notice of death.