JOHN MINGO *vs.* RHODE ISLAND COMPANY.

JULY 1, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1) Negligence. Workmen's Compensation Act. Election of Remedies.*

Article III, Section 21, Workmen's Compensation Act, provides that where the injury was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings both against that person to recover damages and against any person liable to pay compensation under the act for such compensation, but shall not be entitled to receive both damages and compensation, and if the employee has been paid compensation under the Act, the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor.

*Held,* that where payments were received by the employee from the employer under a *bona fide* agreement that the money was to be returned if damages were obtained from the wrongdoer, the employee was not barred thereby from proceeding against the wrongdoer for damages and the fact that such payments were made under an agreement filed in court and approved by the court, where the employee was the moving party, was not material and could not be regarded as an election, since the employee was given express

authority to take proceedings both against the employer and the negligent third party, the only limitation being that he should not be entitled to receive both damages and compensation.

*Held*, further, that the effect of the agreement was to accomplish the purpose of the statute in giving the right of indemnity to the employer against the negligent third person with the intent that the final payment for the damages suffered should not be made by the employer, but by the person responsible for the injury, and it was not the intent of the statute to lessen or change the liability of the negligent third person who was fully protected therein from a double liability.

VINCENT and BAKER, JJ., dissenting.

(2)  *Workmen's Compensation Act.  Construction of Statutes.*

It being apparent that the Workmen's Compensation Act of 1912, was patterned closely after the English Act, 1906 (Ch. 58, 6 Edw. 7), the construction placed upon the statute by the English courts is entitled to very great weight, and in view of the similarity of the acts is of persuasive authority.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of plaintiff and certain exceptions sustained.

STEARNS, J.  This is an action at law to recover damages for negligence.  The plaintiff, a truck driver in the employ of the Providence Coal Co., on the 16th day of August, 1916, was injured in a collision between his truck and a trolley car of the defendant, caused, as he alleges, by the negligence of the defendant.  The defendant pleaded the general issue, and in its second plea alleges that on September 27, 1916, the plaintiff and his employer entered into an agreement in accordance with the "Workmen's Compensation Act," whereby the said coal company agreed to pay the plaintiff a certain sum for medical aid and also compensation at the rate of five and 84-100 dollars per week during the period of total incapacity resulting from said injury; that this agreement was duly approved by a justice of the Superior Court on the 5th day of October, 1916, which agreement is now on file in the office of the clerk of said court and that said coal company paid to the plaintiff in accordance with the terms of the agreement the sum of $70.08 as compensation under the terms of the compensation act.

To this plea the plaintiff filed several replications to each of which the defendant demurred.  The Superior Court sus-

tained the demurrers to which decision the plaintiff duly excepted and the plaintiff now comes to this court by bill of exceptions.

The first replication does not refer to any agreement, but alleges a tender to the employer of the amount received from him and a refusal by the employer to receive the same. At the hearing before this court the plaintiff stated that he did not rely on this replication and the exception to the decision of the Superior Court in sustaining the demurrer to this replication is overruled.

In the sixth replication, which raises the main question in this case, the plaintiff alleges that the agreement with his employer was made on the express understanding and agreement between the plaintiff and his employer that the plaintiff should receive the compensation provided for in said agreement, as approved, and proceed to bring action against the defendant for the negligence of defendant, and that the plaintiff should be bound and liable to repay to his employer all moneys received by him under said agreement out of any money or damages recovered from the defendant; that this action is brought in accordance with an express agreement between the plaintiff and his employer for the purpose of recovering the compensation paid to plaintiff by his employer as well as for the benefit of the plaintiff.

In the other replications the plaintiff alleges in different phraseology the agreement between the plaintiff and his employer and that before this suit was begun the plaintiff made a lawful tender to his employer of the amount which had been paid to him by his employer; that this tender was refused by his employer and that since such tender and refusal the plaintiff has refused to accept any money from his employer under the agreement. By the demurrer the defendant claims that notwithstanding the tender and refusal to acept further compensation the agreement with the employer duly filed and approved remains in full force and effect and constitutes an election of remedies on the part of the plaintiff which bars the plaintiff from proceeding against

this defendant for damages, and relies on the provisions of Section 21, Article III, "Workmen's Compensation Act," (1912), which is as follows: "Sec. 21. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings both against that person to recover damages and against any person liable to pay compensation under this act for such compensation, but shall not be entitled to receive both damages and compensation; and if the employee has been paid compensation under this act, the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and, to the extent of such indemnity, shall be subrogated to the rights of the employee to recover damages therefor."

This section is substantially the same as Section 6 of the English Workmen's Compensation Act, 1906, (Ch. 58, 6 Edw. 7), and upon comparison of the two acts it is apparent that the Rhode Island act was patterned closely after the English act.

The English Workmen's Compensation Act of 1897 (Ch. 37, 60 & 61 Vict.), repealed by the act of 1906, provided that the injured employee might "at his option proceed" either against the third person negligent to recover damages or under the compensation act against his employer for compensation, but not against both. Each of the English acts, *supra*, provided that the employer should be indemnified by the negligent third person.

In view of the history of this class of legislation in England and the similarity of our compensation act to the English act, the decisions of the English courts are of great importance in the determination of the question before us.

In the case of *Oliver* v. *Nautilus Steam Shipping Co.* 19 Times Law Reports, 607 (1903), it appears that the plaintiff, while in the employ of Rodgers & Co., ship repairers, was injured by reason of the negligence of an employee of the

defendant.   The plaintiff notified his employer of the acci-
dent and some weeks later the agent of an insurance com-
pany, with whom the employer had effected insurance
against accidents to workmen in their employ, paid plain-
tiff £4 13s 4d, being at the rate of £1 a week for four weeks
and four days, and the plaintiff signed a receipt therefor
stating that the money was received from his employers
"on account of compensation which may be or become due
to me under the Workmen's Compensation Act, 1897."   A
few days thereafter a member of his trade union cautioned
the plaintiff against accepting any further payments without
stipulating that he did so without prejudice;   accordingly,
when the insurance agent next called and tendered the
plaintiff £1 as payment for one week to date, the plaintiff
informed him that he could only accept that and any further
payments "without prejudice" to which the agent assented.
The plaintiff then accepted the £1 and signed a receipt as
before though the receipt did not itself contain the words
"without prejudice."   Weekly payments of £1 a week con-
tinued to be made to him upon receipts as before for more
than four months when he refused to accept any further
payments and shortly thereafter brought suit against the
defendant.   The case was tried by a judge without a jury
who held that the plaintiff was debarred by the provisions of
the Workmen's Compensation Act of 1897 from pursuing
his action against defendant.   On appeal the court said that
the question in the case was, had the workman received
compensation from his employers under the act?   That
upon the facts the whole of the payments, from first to last,
must be treated as having been made "without prejudice,"
and that "justice required that in this case the court should
hold that the workman had not irrevocably bound himself
by what he had done, or exercised his option under the
section so as to enable the defendants to say they were not
liable to him at common law."   The appeal was allowed
and the decision of the lower court was reversed.

In *Wright* v. *Lindsay & others*, 49 Scot. L. R. 210 (1911), it appears that the plaintiff was injured in a collision with a motor car which belonged to the defendants, the driver of which was negligent. After the accident the plaintiff claimed and received compensation from his employers under the Workmen's Compensation Act of 1906 and his employers paid him certain sums as compensaiton, but this was done upon the express understanding that the plaintiff was to sue the party in fault for damages and if he was successful the sums given to him in the meantime by his employers were to be returned. The defendants pleaded that the plaintiff had already received compensation from his employers and that his right to recover against them was barred by Section 6 of the English Act, 1906. On appeal it was held that plaintiff was not barred thereby from bringing his action for damages against the defendants. The court, at page 213, says: "The question is whether the pursuer's claim against the defenders is excluded. It would certainly be odd if it should be so, seeing that both the parties to the agreement, which is said to operate as a bar, understood and intended that the pursuer, notwithstanding the payments, should be at liberty to proceed against the defenders at common law, and the defenders can show no good ground in equity why they should be absolved from their civil liability to the pursuer. Under the arrangement between the pursuer and his own employers they are secured against being called upon to make any payment to the employers after they have settled the pursuer's claim as judicially ascertained, . . ." "Unless, therefore, the language of Section 6 admits of no other construction than that put upon it by the sheriff, there seems no good ground in principle or in equity why the pursuer should be barred from recovering damages at common law to which *ex hypothesi* he is otherwise entitled."

"The sixth section of the 1906 Act is expressed in different terms from the corresponding section of the earlier Act. The workman is now entitled to take proceedings both

against the third party by whose negligence he has been injured and against his own employers under the Act. In this respect it is more favourable than the earlier Act, which gave the workman only an option to proceed either at law against the third party to recover damages or against his employers for compensation under the Act, but not against both. The only limitation now is that he shall not be entitled to recover both damages and compensation. The Sheriffs in deciding the case against the pursuer have put a very narrow meaning upon the word 'recover.' In their view it is enough that the pursuer has, as in question with his employers, accepted payments of money from them as in satisfaction of compensation under the Act. I do not think I should have differed from them if the payments had not been made and accepted under reservation of the pursuer's right to proceed against third parties. But where a payment is made by an employer to his workman on the footing that he shall be entitled to recover damages at common law against third parties, and that the sums which the employer has disbursed are to be repaid out of any damages which he may so recover, I think the case is entirely different. The compensation so paid is in the nature of an advance by the employer for the maintenance of the pursuer pending proceedings to make good his claim, and is only accepted as in full of the workman's right under the Act against his employer in the event of his claim against the third party being unsuccessful. I cannot think that it was ever intended that the Act should make ineffectual an arrangement of this kind, eminently reasonable from the point of view of both workman and employer and in the interests of both. The English case of Oliver (1903), 2 K. B. 639, although decided under the previous Act, is a distinct authority for the contrary proposition."

The cases cited show the rule to be settled under the English Compensation Act where payments are received from the employer by the employee under a *bona fide* agreement that the money is to be returned if damages are

obtained from the wrongdoer, that the employee is not barred thereby from proceeding against the wrongdoer for damages. The fact of tender and refusal is not of importance, as it is the agreement which is the vital thing. Inasmuch as our Workmen's Compensation Act was enacted by the legislature in 1912, the year following the decision in the *Wright* case, *supra*, the construction placed upon the statute by the English courts, according to the established rules of statutory construction, is entitled to very great weight and in our opinion in view of the similarity of the two acts is of persuasive authority in the decision of this case. But the defendant seeks to avoid the force of these precedents and claims that, as the payments by the employer were made under an agreement filed in court and approved by the court, which agreement is in full force, the approval of the agreement by the court is a formal adjudication of the case by the court and that as a consequence thereof the employee must be held to have made an irrevocable election under the act. The proceedings authorized by our compensation act with reference to the employer's liability are of two kinds. First, in the case of an agreement in regard to compensation between the employer and employee, it is provided that a memorandum of the agreement signed by the parties shall be filed in the office of the clerk of the Superior Court. The clerk is directed to docket the same and at once to present the agreement to a justice of the Superior Court for his approval, and when so approved the agreement is made enforceable by any suable process. The details of the agreement which may be made are carefully defined in the statute, and it is expressly provided that such agreement shall be approved by said justice *only* when its terms conform to the provisions of the act. It is further provided that the Superior Court may review this agreement at any time within two years from the date of approval upon the application of either party and if the condition of the employee has subsequently changed the court in its discretion may increase, diminish or discontinue the compensation.

The agreement also may be modified at any time, by the subsequent agreement between the parties without the intervention of the court, provided that the modified agreement is subsequently approved by the Superior Court. In the second case, where the parties fail to agree as to compensation, it is provided that proceedings may be commenced by the employer, employee or any person in interest by the filing in the Superior Court of a petition in the nature of a petition in equity. The respondent must file an answer within ten days, and after assignment for hearing on motion day, the court is directed to hear witnesses, decide the merits of the controversy and file a decision in writing with the clerk of the court with provision that a decree shall be entered thereon.

Apparently one purpose of these provisions in regard to procedure, is to encourage the making of agreements and as far as possible to avoid the necessity of litigation between employer and employee. If an employee fails to reach an agreement with his employer the latter may by adversary proceedings, by petition, secure an adjudication of the employee's claim and by Section 8, Article III, the court in its discretion may award costs of the suit against the employee. The mere adjudication by the court of the employee's claim cannot therefore be held in every case to bar the right of the employee to sue the negligent third person. In the case of an agreement the statute does not specify the party by whom the agreement shall be filed but simply provides that it "shall be filed in the office of the clerk of the Superior Court." If the agreement is filed by the employer, which is the usual case, the approval of the agreement by the court in such a case cannot fairly be considered as an election of remedies by the employee. Inasmuch as the act provides that a claim against the employer shall be barred unless an agreement or petition is filed in court within two years of the date of injury it is apparent that, in some cases at least, in order to fully protect himself the employee may be compelled to file his claim before the

question of the liability of the negligent third person can be finally adjudicated in the court.

In view of these considerations it does not seem to us that the fact that the employee is the moving party in securing the approval of an agreement or the adjudication of the court in the action on petition alters the situation, as by Section 21 the employee is given express authority to take proceedings both against the employer and the negligent third person, that is to secure a legal adjudication of his claim against both parties, and the only limitation to this right to take proceedings is that the employee shall not be entitled to receive both damages and compensation. The employer is given the right of indemnity against the negligent third person with the intention that the final payment for the damage suffered by the employee shall be made not by the employer but by the negligent third person who is responsible for the injury. The effect of the agreement in question is to accomplish this purpose of the statute and to aid the employer in securing the right of indemnity given to him by the statute. It is not the purpose of this statute to lessen or to change the liability of the negligent third person who is fully protected therein from a double liability, and in our opinion it was not the intention of the legislature to restrict the right of the employee to make and act upon such an agreement as the one in question, and we do not think that the mere approval by the court of the agreement, procured by the initiative of either employee or employer. should be construed as a bar to the employee's right of action against the person responsible for the injury.

As already indicated the demurrer to the first replication was properly sustained, and the exception to this ruling is overruled. The exceptions to the rulings sustaining the demurrers to the other replications are sustained and the case is remitted to the Superior Court for further proceedings.

BAKER, J., dissenting. As I do not concur in the con-clusion reached by the majority of the court I hereby state the grounds of my dissent.

The plaintiff was employed on August 16, 1916, by the Providence Coal Company as a driver of one of its coal teams and on that day received injuries in consequence of a collision of the team he was driving with a street car of the defendant corporation.

In Section 21 of Article III of the Workmen's Compensation Act, it is provided that "where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings both against that person to recover damages and against any person liable to pay compensation under this act for such compensation, but shall not be entitled to receive both damages and compensation."

The precise question, which arises on demurrer, is whether plaintiff has received compensation under said act from his employer.

The defendant by its special plea in bar alleges "that on, to wit, the 16th day of August, A. D. 1916, the date of the alleged injury to the said plaintiff, he, the said plaintiff, and his employer, the Providence Coal Company, were subject to the provisions of a certain act of the General Assembly of said State, known as the 'Workmen's Compensation Act;' that on, to wit, the 27th day of September, A. D. 1916, the said plaintiff and the said Providence Coal Company entered into an agreement under said act, whereby the said Providence Coal Company agreed to pay the said plaintiff a certain sum for medical aid and also compensation at the rate of, to wit, five and 84-100 (5.84) dollars per week during the period of total incapacity resulting from an injury alleged to have occurred on to wit, the 16th day of August, A. D. 1916, which said agreement was duly approved by a justice of said court on, to wit, the 5th day of

October, A. D. 1916, and is now on file in the office of the clerk of said court; that said Providence Coal Company paid to the said plaintiff compensation under said act in accordance with the terms of said agreement, in the sum of, to wit, seventy and 8-100 (70.08) dollars."

To this plea the plaintiff filed six replications, the first of which he waives. The second replication alleges that said agreement was obtained on the "distinct understanding and representation that the plaintiff could at any time disaffirm the same and tender and pay back the money received thereunder" and thereafter be entitled to bring his action against the defendant. The other four replications allege that said pleaded agreement was made "on the express understanding and agreement" between him and his employer, which in the third replication is stated to be "that the plaintiff should have the right at any time to return all compensation received from said Providence Coal Company under said agreement and thereupon of bringing action against this defendant for negligence"; in the fourth replication the "express understanding and agreement" is said to be that "the plaintiff should receive the compensation provided for in said agreement, as approved, and proceed to bring action against the defendant  .  .  .  and should be bound and liable to repay  .  .  .  all moneys received by him under said agreement out of damages received or recovered" from defendant; in the fifth replication the "express understanding" is essentially the same as that in the fourth; and in the sixth replication the "express understanding" is stated to be that "plaintiff should receive the compensation provided for in said agreement, as approved, and proceed to bring action against this defendant for negligence"  .  .  .  "and should be bound to repay to" its employer "all moneys received by him under said agreement out of any moneys or damages received or recovered" from the defendant; "and the plaintiff alleges that he has received divers sums of money and payments under and by virtue of said agreement filed and approved by the Superior Court, as alleged in said defendant's said plea."

The plaintiff alleges in most of the replications that before bringing this action he had tendered back the moneys received from his employer, but that it had refused to receive them.

The defendant demurred to all of these replications and the Superior Court sustained the demurrers, to which ruling the plaintiff duly excepted, and the case is before this court on his exceptions to such ruling.

This makes it necessary to consider the effect of an employer and employee reaching an agreement in regard to compensation under the Workmen's Compensation Act, signing a memorandum of such agreement, and filing the same in the office of the clerk of the Superior Court and of the latter's presentation of such agreement to a justice of the Superior Court, and in particular of the approval by said justice of the agreement. The provision for the making, filing and approving of such agreements by employer and employee is contained in Section 1 of said Article III on Procedure which, so far as is now important to quote is as follows: "If the employer and the employee reach an agreement in regard to compensation under this act, a memorandum of such agreement signed by the parties shall be fied in the office of the clerk of the superior court having jurisdiction of the matter as provided in Section 16 of this article. The clerk shall forthwith docket the same in a book kept for that purpose, and shall thereupon present said agreement to a justice of the superior court, and when approved by the justice the agreement shall be enforceable by said superior court by any suitable process, including executions against goods, chattels and real estate, and including proceedings for contempt for wilful failure or neglect to obey the provisions of said agreement. No appeal shall lie from the agreement thus approved unless upon allegation that such agreement had been procured by fraud or coercion. Such agreement shall be approved by the justice only when its terms conform to the provisions of this act."

Not all agreements for amicable settlement made by employer and employee, can be approved by a justice, but only those which by their "terms conform to the provisions of this act," and there are several cases in which it is held that agreements not in conformity to such acts are no bar to proceedings under the act.   It is obvious that when approved an agreement under the act becomes conclusively binding upon the parties thereto.   Appeal therefrom is permissible only upon allegation of fraud or coercion. · And while Section 14 permits the court at any time within two years after approval of an agreement, upon petition, to change the amount of compensation, if the changed condition of the employee warrants it, and also permits the parties to modify the original by a subsequent agreement subject to its approval by the Superior Court and its being in conformity with the terms of the act, it is plain that until an agreement is altered in one of these ways it continues to be binding upon the parties thereto.   Section 1 also makes an approved agreement enforceable by the Superior Court "by any suitable process, including executions against goods, chattels and real estate, and including proceedings for contempt for wilful failure or neglect to obey the provisions of said agreement," which is precisely the language used in Section 6 relative to the enforceability of decrees of the Superior Court entered after hearing and decision upon a petition asking for compensation under the act.   An approved agreement, therefore, has the validity· and force of a judicial decree.   This is made clear by Chapter 936 of the Public Laws in amendment of Article III of the Workmen's Compensation Act (1913) which provides that "proceedings in all cases under this act shall be deemed matters of record," although in fact required only to be filed, numbered and docketed.   An agreement made, filed and approved as provided in Section 1 is certainly a proceeding under the act. See *Page* v. *Burtwell*, 2 K. B. L. R. 758 (1908).

Section 21 of Article III of our act is in substance the same as Section 6 of the Workmen's Compensation Act, 1906, of

Great Britain except that the latter uses the word "recover" in place of "receive" in our act.   Schedule II of the British act by Section 9 provides that "where the amount of compensation under this act has been ascertained . . . either by a committee or by an arbitrator or by agreement, a memorandum thereof shall be sent, in manner prescribed by rules of court, . . . to the registrar of the county court who shall . . . on being satisfied as to its genuineness, record such memorandum in a special register without fee, and thereupon the memorandum shall for all purposes be enforceable as a county court judgment."

There are provisions giving the registrar authority to refuse to record an agreement under which the compensation is payable to a person under disability or to dependents, if he deems the amount inadequate, or that the agreement was obtained by fraud or undue influence.   And the judge of the county court, within six months after the record of the agreement may order the record to be removed from the register on proof "that the agreement was obtained by fraud, undue influence or other improper means."   See Elliott's The Workmen's Compensation Act (1913) 6th Ed. p. 551.

Section 8 of Schedule II under the act of 1897 provided for the record of an agreement and made it enforceable as a judgment when recorded.   Elliott, *supra*, p. 562.   Many of the states in the Union have provisions more or less similar for the recording of agreements under Workmen's Compensation Acts.

It is well-settled that "it is a rule of the common law that the record of a court imports such absolute verity that, as a general rule, no person against whom it is producible is allowed in collateral proceedings to aver or prove as error in fact a matter contrary thereto."   11 Am. & Eng. Encyc. of Law, 389.   See also 16 Cyc. 684.

In *State Bank of Indiana* v. *Young*, 52 Am. Dec. 501 (2 Ind. 171) which was a bill in equity to amend the record in a law case and to enforce a parol agreement of compromise,

the court on page 504 says: "The bill shows that after the parol agreement was made the parties, in pursuance of it, appeared in court, and had a judgment rendered in the cause for the plaintiff. The rendition of that judgment put an end to the previous parol agreement on the subject. For the terms of that judgment we must look to the records alone of the court that rendered it. The plaintiff is estopped from saying that the judgment does not accord with the previous parol contract. In the case of a mere written agreement, neither party is permitted to say that the terms previously agreed upon by parol were different from those shown by the agreement in writing, and he will, therefore, notwithstanding the written agreement, resort to the one by parol. The rule is the same *a fortiori* in the case of a record." See also *Starbuck* v. *Starbuck*, 173 N. Y. 503, 506; 15 R. C. L. Judgments, Sec. 436.

As under our Workmen's Compensation Act a memorandum of agreement in regard to compensation under the act, signed by employer and employee, filed in the office of the Superior Court, and afterwards approved by a justice thereof, is thereupon "deemed a matter of record" and by the act is in effect given the meaning, character and enforceability of a decree or judgment of the Superior Court, a party to such an agreement, so long as it continues unmodified in manner as provided by the act itself, is estopped from saying in any proceeding, where the existence and effect of such approved agreement are pertinent facts, that the agreement as filed and approved is not the real and entire agreement. In other words he cannot aver and prove some antecedent or contemporaneous "express understanding" which is in conflict with the approved agreement. In this case the plaintiff is not entitled to aver and prove the reservation of the right to disaffirm the approved agreement, as alleged in the second replication, as that right is inconsistent with the agreement and contrary to his rights under the act itself after the agreement was approved. Nor can he aver and prove a prior or contemporaneous "express understanding"

as set forth in the other four replications that he had reserved the right to return or to repay to his employer "all compensation received" by him from it under said agreement, because such understanding is inconsistent with the approved agreement and, if embodied in the agreement, would make it an agreement not in conformity with the act, and because also it is in substance an attempt to reserve a right to modify the approved agreement without the consent of the Superior Court.

Notwithstanding the numerous reported cases under the various compensation acts, no case has been cited to the court which shows an attempt to prove that antecedent or contemporaneous "understandings or. agreements" can affect an agreement duly approved or recorded, as the case may be, under compensation acts. After a somewhat diligent search I have found no such case. And because the statutes themselves so clearly declare the character of approved or recorded agreements there are naturally few cases which discuss the effect to be given them. There are some, however. In *Fife Coal Co..v. Lindsay,* 1 B. W. C. C. 117, 1908, a workman who had been receiving compensation at the rate of 15s. 11d. a week by virtue of a memorandum of agreement duly registered in July, 1905, subsequently returned to work for the same employer and received some wages and about one-third of the compensation allowed by the agreement. In December, 1905, the employers had desired to further reduce the compensation, but the workman would not agree to this and later left the service (claiming that total incapacity to work had again supervened) and charged his employers full compensation under the recorded memorandum of July, 1905, the only registered agreement. The employers asked for a stay on the ground that the recorded agreement had been superseded by subsequent agreements to pay and to accept less compensation. Lord Ordinary Dundas denied the stay or suspension and on appeal the Scotch Court of Session upheld the Ordinary, Lord Justice-Clerk, saying: "There was a recorded agreement entered into between the complainers and the re-

spondent by which his compensation was fixed at 15s. 11d., and it is for that sum that the complainers have received a charge. Their ground of suspension is that the charger agreed at various times to accept, and did accept, a less amount, and this is not disputed. But the only recorded agreement is that for 15s. 11d., and the charger alleges that he is again totally incapacitated, and therefore entitled to enforce the recorded agreement until it is either varied by the recording of another agreement or by a decision in the tribunal appointed for varying or ending a payment fixed under the statute.

"The complainers seek to prove facts in regard to the alleged subsequent agreements and the present condition of the charger. I am of opinion that the Lord Ordinary has rightly refused to allow such proof. The Act contemplates that such matters shall be disposed of in a summary manner by the statutory tribunal, and when an agreement has been recorded, variation of that agreement is not to be sought in a suspension in the Supreme Court, but in an application under the Act (Sched. II, s. 8.)".

In *Tigue* v. *Colville & Sons*, 43 S. L. R. 129 (1905) Lord Low on p. 136, in discussing *Steel* v. *Oakbank Oil Co.*, 5 F. 244, says: "The main ground of judgment was that the agreement having been recorded was equivalent to a decree, and that that decree must remain in force until it was recalled." He quotes Lord Adam as saying in that case, "Once an order for weekly payment has been obtained by a workman under the act, and the memorandum of agreement duly recorded, that continues in force until it is altered by some other order;" and after referring to another case Lord Low adds, "In both these cases the fact that the agreement had been recorded and was an equivalent to a decree was an essential element in the judgment which was pronounced, and in that respect these cases differed entirely from the present case, in which there was no decree, express or implied, but only an unrecorded agreement." See also *Fife Coal Co.* v. *Davidson*, 44 S. L. R. 108 (1906). All of these cases are under the act of 1897.

In *Schofield* v. *W. C. Clough & Co.*, 6 B. W. C. C. 67 (1913) a workgirl who was born on February 9, 1889, met with an accident on February 8, 1910. Compensation at the rate of full wages, 8s. 2d. per week was paid to her under memorandum of agreement to pay her full wages during total incapacity. The memorandum was recorded on the assumption that she was an infant. Under the act of 1906 a workman under 21 years of age, whose average weekly earnings are less than 20 shillings, is entitled to full wages for total incapacity, where a workman 21 years of age is entitled to but one-half of such wages. (See Schedule I, Sec. 1.) The employers having failed in an attempt to get the register rectified on the ground that she was not an infant, attempted two years after the recording of the agreement to have the record removed on the same ground. The county court judge granted the application. On appeal it was held that he had no power to remove the record except under Sched. II (9) (e) and therefore no jurisdiction in the case. Cozens-Hardy, M. R., says in the course of his opinion, "A person ceases to be a minor at the beginning of the last day, and not the commencement of the next day. The parties met, the date not being concealed. They undoubtedly did agree to pay 8s. 2d. An application was made by the girl to record a memorandum of that agreement. It was recorded and the memorandum was an agreed record of that which in fact had been agreed upon. . . . Now the application is made by the employers to remove the agreement from the record, and they seek to do that under Schedule II (9) which provides for what is called recording the agreement. . . . Schedule II (9) (e) says he may within six months order that the record may be removed . . . There is here a period of limitation; no more than six months is to elapse. Fraud, undue influence, improper means are grounds for removal. The only thing in this case alleged is mutual mistake on a point of law. That may or not be a ground for getting an agreement rescinded or set aside under the general jurisdiction of the court. We are, however, dealing with a special jurisdiction afforded to the judge of the county court,

and there is no presumption that the judge is to have general or larger jurisdiction."

These cases show the effect given to a recorded agreement under the British Acts and are entitled to much weight in determining the effect to be accorded an approved agreement under our own act which contains many features in common with the British Acts.

The important and determining fact in the present case is, of course, whether the plaintiff has received from his employer compensation payable under the Workmen's Compensation Act for the injury to recover damages for which he has brought this action against the defendant. It is conceivable that a workman might take proceedings relative to some injury both against his employer and some other person, against his employer for compensation under the act and against the other person for damages for negligence, and might prosecute such proceedings until he had secured an approved agreement with his employer or a decree of the court against such employer, and until he had also obtained a judgment for damages against the person charged with negligence, provided that up to that time he had neither received compensation from the one nor damages from the other. But at some time or other he must choose between compensation and damages. And at whatever stage of the proceedings he receives any compensation as such or any damages as such he makes his election of remedy and in consequence cannot afterwards proceed further against the other of the two against whom he had taken proceedings. In the present case the defendant alleges that the plaintiff's employer has paid him "compensation under said act in accordance with the terms of said agreement," and the plaintiff in his sixth replication expressly alleges that "he has received divers sums of money and payments under and by virtue of said agreement filed and approved by the Superior Court, as alleged in said defendant's said plea." In other words, the defendant alleges and the plaintiff admits that he has received compensation under the act. He cannot now, therefore, be permitted to claim or prove that

he has not received compensation. The fact that an injured employee repays to his employer money received from him is immaterial, if it was originally paid to him under the Workmen's Compensation Act. Such original payment can be set up as a bar to an action for damages against a third person for negligence. *Huckle* v. *London County Council,* 26 The Times L. R. 580 (1910).

I do not discuss the cases of *Oliver* v. *Nautilus Steam Shipping Co.* and *Wright* v. *Lindsay,* cited in the majority opinion, for the reason that, however much weight should be given them in a case in which the significant fact is the acceptance by an injured employee of moneys paid him by his employer, accompanied by a reservation, express or implied, on the part of the employee of all his rights, they, in my opinion, cannot be regarded as authoritative in the decision of a case like the present one, in which there appear as the significant and controlling facts that an employer and an employee have entered into a formal written agreement in regard to compensation under the Workmen's Compensation Act, that such agreement has been approved by the Superior Court and by such approval has acquired the force and validity of a judicial decree, and finally that the employee admits that he has received from his employer "divers sums of money and payments under and by virtue of said agreement filed and approved by the Superior Court." And in each one of the preceding replications he admits the payment of money to him by his employer "under and by virtue of said agreement filed and approved" as aforesaid.

In my judgment the plaintiff has made his choice to receive compensation and in consequence is conclusively barred from seeking damages from the defendant.

All the plaintiff's exceptions should be overruled and the case be remitted to the Superior Court for further proceedings.

VINCENT, J., concurs in dissenting opinion of BAKER, J.

*A. B. Crafts,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant.